IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| WESLEY OSTROFF, <br> REBECCA PERRY, <br> P.O. Box 45 <br> Brilliant, Ohio 43913 <br><br> and <br><br> INTERNATIONAL ASSOCIATION OF FIRE FIGHTERS LOCAL 3714, <br> 501 Commercial Street <br> Mingo Junction, Ohio 43938 <br><br>     Plaintiffs, <br><br>     v. <br><br> VILLAGE OF MINGO JUNCTION and JUDY RUCKMAN, in her individual and official capacities, <br> 501 Commercial Street <br> Mingo Junction, Ohio 43938 <br><br>     Defendants. | CIVIL ACTION No. <br><br> Jury Demand Endorsed Herein |

## COMPLAINT

Plaintiffs Wesley Ostroff, Rebecca Perry, and the International Association of Fire Fighters, Local 3714 ("Local 3714") bring this action against Defendants Village of Mingo Junction ("the Village") and Judy Ruckman in her individual and official capacities pursuant to 42 U.S.C. § 1983 for violation of Plaintiff Ostroff's and Perry's First and Fourteenth Amendment rights, as well as for breaching Local 3714's collective bargaining agreement ("CBA") with the Village. As explained in further detail below, Defendants placed Plaintiffs Ostroff and Perry on unpaid administrative leave and eventually terminated their employment with the Mingo Junction Fire Department ("the Fire Department") because they sought judicial relief from other

employees who were harassing and threatening physical harm against them. Plaintiffs Ostroff and Perry challenged these unlawful actions under the grievance procedures set forth in the CBA, and the Village Council ordered their reinstatement as a resolution of the grievance. In direct violation of that order, Defendant Ruckman refuses to allow Plaintiffs Ostroff and Perry to return to the Fire Department. Plaintiffs accordingly pray for an order from this court requiring Defendants to carry out their obligations under the CBA; to restore Plaintiffs Ostroff and Perry to their rightful positions within the Fire Department; and to pay Plaintiffs Ostroff and Perry backpay, attorneys' fees and costs, compensation for emotional and mental harm, punitive damages, and other relief the Court deems just and proper.

## JURISDICTION

1. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because Plaintiffs Ostroff and Perry's claims arise under 42 U.S.C. § 1983 and the First and Fourteenth Amendments to the United States Constitution.

2. This Court has supplemental jurisdiction over Local 3714's breach of contract claim pursuant to 28 U.S.C. § 1367 because it is so related to Plaintiffs Ostroff and Perry's federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

3. Venue is proper in this district pursuant to 28 U.S.C. § 1391 because Defendants are located within the Southern District of Ohio and the events and omissions giving rise to this action occurred within the Southern District of Ohio.

## BACKGROUND

4. The Village is a municipal corporation formed under the laws of Ohio and has a population of approximately 3,300 people.

5. Defendant Ruckman has served as Mayor of the Village since January 1, 2024.

6. As mayor, Defendant Ruckman exercises executive authority in the Village with the power to supervise the conduct of officers. *See* Ohio R.C. 733.23, 733.24, 733.34. By custom, Defendant Ruckman also exercises personnel and disciplinary policymaking authority over Village employees.

7. The Mingo Junction Fire Department ("the Fire Department") provides fire protection and emergency response services for the Village and employs 37 fire fighters and emergency medical technicians ("EMTs").

8. Plaintiff Ostroff joined the Fire Department in 2014 as a part-time EMT and was promoted to the rank of Captain in June 2022.

9. Plaintiff Perry joined the Fire Department in November 2023 as a part-time Advanced EMT and became a full-time fire fighter and Advanced EMT in May 2024.

10. Plaintiffs Ostroff and Perry[1] are both members of Local 3714, a chapter of the International Association of Fire Fighters which represents full-time fire fighters and EMTs who work for the Fire Department. Plaintiff Ostroff currently serves as President of Local 3714, and Plaintiff Perry currently serves as Secretary.

11. In May 2024, Local 3714 and the Village entered a CBA setting forth, among other things, rights of covered employees and a grievance procedure to resolve violations of those rights. (Attached as Exhibit 1).

12. In June 2024, Plaintiff Ostroff exercised his rights under the CBA by initiating a grievance against two Fire Department employees who berated and intimidated other employees: Assistant Fire Chief Nicholas Moore and EMS Lieutenant Catherine Givens.

---

[1] For ease and clarity, hereinafter, "Plaintiffs" refers solely to Plaintiff Ostroff and Plaintiff Perry.

13. After Moore and Givens threatened to physically harm Plaintiffs, Plaintiffs sought an Order of Protection from the Court of Common Pleas in Jefferson County, Ohio.

14. In response, Defendants suspended Plaintiffs and eventually terminated their employment.

I. **Facts Giving Rise to the Hostile Work Environment**

A. **March 18, 2024, Incident**

15. The first major incident involving Plaintiffs and Moore took place on March 18, 2024, when Plaintiffs and Moore responded to a report of a brush fire on State Route 151.

16. Plaintiff Ostroff drove an engine to the scene, with Moore riding in the passenger seat and Plaintiff Perry in a front-facing backseat.

17. Plaintiff Ostroff drove past an access road designated by Moore to reach the fire because Plaintiff Ostroff believed there was another access point closer to the fire.

18. When Plaintiff Ostroff discovered they would not be able to access the fire from the driveway he believed was the closer entry point, he turned the engine around to return to the access road designated by Moore.

19. In response, Moore berated Plaintiff Ostroff and threw his cell phone at the windshield of the engine, cracking the passenger side windshield:



20. Upon completing the call, Plaintiffs filed incident reports describing the altercation with Moore.

21. Following the March 18, 2024, incident, Moore threatened to not schedule Plaintiff Perry for any shifts.

22. Moore also sometimes drove the ambulance recklessly when responding to calls because he, a Basic EMT, disagreed with the patient care decisions made by Plaintiffs Ostroff and Perry, higher ranking Advanced EMTs.

23. On June 10, 2024, then-Fire Chief Brandon Montgomery met with Defendant Ruckman and Moore to discuss March 18, 2024, incident, and Defendant Ruckman told Moore "to be mindful of others and not to yell."

B. **May 31, 2024, Incident**

24. On May 31, 2024, Plaintiff Ostroff texted Givens about several missing items that Givens had inventoried in a regular ambulance check.

25. Givens believed that Plaintiff Ostroff was accusing her of stealing or misplacing the items and became hostile.

26. Plaintiff Ostroff responded that he would not be spoken to in that way and ended the conversation.

27. Plaintiff Ostroff then notified Moore because Moore oversaw all part-time employees.

28. Moore told Plaintiff Ostroff that he would speak to Givens and tell her to calm down, but Givens' adversarial attitude and hostility on shift continued.

C. **June 11, 2024, Incident**

29. In the early hours of June 11, 2024, Plaintiffs and Givens responded to a call for an unresponsive male patient at the JSW Steel lab, a steel mill in the Village.

30. While responding to the call, Givens acted in a hostile manner towards Plaintiff Perry—the Officer in Charge on shift—by ignoring her directions, responding with an adversarial attitude, and slamming the doors on the ambulance.

31. After delivering the patient to the hospital, Plaintiff Perry told Givens that she was going to send her home for insubordination once they returned to the station.

32. On their drive back to the fire station, Plaintiff Perry explained the situation on the phone with the then-Fire Chief Brandon Montgomery, who agreed with her decision to send Givens home.

33. Moore was waiting at the station when they arrived and questioned why Plaintiff Perry contacted Fire Chief Montgomery directly rather than him, the next highest officer in the chain of command.

34. Plaintiff Perry explained that Fire Chief Montgomery had previously instructed her to come to him directly if there were further issues with Givens to avoid the appearance of a conflict of interest due to Moore and Givens' relationship.

35. Givens was irate that Plaintiff Perry contacted Fire Chief Montgomery, yelled at Plaintiffs, and threw her belongings.

36. Moore likewise yelled at Plaintiffs because he felt that Fire Chief Montgomery's instruction to Plaintiff Perry impugned his integrity.

37. In between expletives, Moore told Plaintiffs that Plaintiff Perry should not have sent Givens home and that he could oversee Givens with impartiality.

38. Moore also threatened to send Plaintiffs home and write them up even though they followed Chief Montgomery's instructions and were responding calmly to Moore's and Givens' diatribes, which was replete with yelling and expletives.

39. Later that evening, Plaintiffs explained the incidents with Moore and Givens to Defendant Ruckman and expressed their intention to file a Hostile Work Environment grievance.

40. Plaintiff Ostroff specifically told Defendant Ruckman, "I am terrified of Nick Moore. I do not feel safe coming to work."

41. Defendant Ruckman responded that she was shocked that they were afraid of Moore, she was sorry they felt that way, and they would have a sit-down conversation at a later date to hash things out.

### D. Plaintiffs Initiate a Hostile Work Environment Complaint

42. On June 12, 2024, Plaintiff Ostroff wrote to Fire Chief Montgomery, Defendant Ruckman, and Members of the Village Council to initiate a hostile work environment complaint.

43. In the complaint, Plaintiff Ostroff explained that he already feared for his personal safety when Moore broke the engine windshield by throwing his cell phone at it in a fit of anger on March 18, but after Moore had threatened to write them up and send them home for contacting Fire Chief Montgomery the previous night regarding Givens's insubordinate behavior, he was fearful for his livelihood as well.

44. Plaintiff Ostroff further explained that Moore and Givens' anger and aggression made other employees uncomfortable at work and fearful of performing their job duties "because they fear responses and or actions they will receive in return."

45. Plaintiff Ostroff underscored that Moore's outbursts threatened the effective performance of the Fire Department:

> The environment that this department and I have been presented with has prevented us from functioning with the high standards that Mingo has been known for decades. As the QA/QI officer I see procedures are being missed, treatments are not being performed fully due to being rushed or providers being told they are wrong when in fact they are not by these two and nobody can tell them otherwise out of fear of being treated or berated even more than they already are.

46. Plaintiff Ostroff concluded his letter, "I am terrified of Nick Moore, especially after the windshield incident. I do not feel safe coming to work anymore. My safest days are the days I know that Nick is not around and will not be answering calls. I come to you for help."

### II. Plaintiffs Petition for an Order of Protection

47. On June 13, 2024, Fire Chief Montgomery called Plaintiff Ostroff to explain that Fire Chief Montgomery had been placed on Administrative Leave due to Sexual Misconduct

8

allegations against him. Aaron Dickey was appointed Interim Fire Chief while Montgomery was on Administrative Leave.

48. That weekend, June 15 and 16, Plaintiffs received messages from other part-time Fire Department personnel explaining that Moore and Givens had made comments at the station threatening harm to Plaintiffs, such as, "if they [Plaintiffs] think they are safe they are wrong."

49. Plaintiffs also saw Moore sitting at the end of the driveway to their apartment complex.

50. Plaintiffs feared that they were in imminent danger of physical harm from Moore.

51. Accordingly, on Monday, June 17, 2024, the day they were scheduled to meet with Defendant Ruckman to discuss the environment at the Fire Department, Plaintiffs petitioned for an Order of Protection before the Court of Common Pleas in Jefferson County, Ohio.

52. After an ex parte hearing, Judge Joseph J. Bruzzese Jr. issued a Temporary Order of Protection requiring Moore to stay more than 500 feet away from Plaintiffs. (Exhibit 2).

53. Plaintiffs presented the Order to Defendant Ruckman at their scheduled meeting later that day.

54. At the meeting, Defendant Ruckman told Plaintiffs that she "can't take [Moore's] livelihood."

55. Instead, Defendant Ruckman took Plaintiffs' livelihood by placing them on unpaid administrative leave and directing Interim Fire Chief Dickey to escort them out of the building.

56. Thereafter, Plaintiffs repeatedly requested a written letter from Interim Fire Chief Dickey stating why they were placed on unpaid administrative leave, but they never received any such letter.

9

57. On June 19, 2024, Defendant Ruckman texted Plaintiffs that they could return to work on opposite shifts as Moore.

58. Plaintiffs responded that they would return if they could enter into a written agreement stipulating that Plaintiffs and Moore would not be scheduled on the same shift and would not be required to respond to the same off-duty calls.

59. Defendant Ruckman responded, "I've been advised not to put anything in writing. Sorry."

60. Plaintiff Ostroff responded that that he was still happy to have a meeting with Defendant Ruckman.

### III. Plaintiffs Initiate a Grievance, and Defendants Wrongfully Terminate Plaintiffs

61. The CBA's grievance procedure sets forth four steps covered employees and the Village must adhere to when handling grievances. At step 1, an aggrieved employee may attempt to resolve a grievance informally with the Fire Chief. At step 2, an employee dissatisfied with the Fire Chief's resolution may request a hearing with the mayor, who must then provide a written answer to the grievance. At step 3, an employee dissatisfied with the mayor's resolution may request a hearing with the Village Council, which must then issue a written decision. Finally, at step 4, the employee may submit the grievance to final and binding arbitration. Exhibit 1, CBA Art. 32(F) at pp. 17-18.

62. On June 24, 2024, Plaintiffs filed a grievance ("Grievance 1") challenging Defendant Ruckman's decision to place them on unpaid administrative leave on June 17, 2024.

63. On June 26, 2024, Plaintiffs and Defendant Ruckman met with an IAFF representative to discuss resolving Grievance 1 and returning to work, in accordance with step 2 of the grievance process.

10

64. Plaintiffs and Defendant Ruckman discussed Plaintiffs returning to work on shifts opposite of Moore if they withdrew their petition for an Order of Protection.

65. On July 2, 2024, Plaintiffs both received text messages from Defendant Ruckman asking if they were returning to work.

66. Plaintiffs responded that if they returned to work, they would be violating their own Order of Protection.

67. Defendant Ruckman texted Plaintiffs again the next day, July 3, 2024, stating:

> I spoke to our attorney. The Hostile work environment can be handled if you are on different shifts and have no interaction with Nick. As far as all calls mutual aide [sic] The Village has a responsibility to protect the public. Having two members as the reason they can't respond is not feasible. Will you be returning to work?

68. Returning to work on Defendant Ruckman's suggested terms would have violated Plaintiffs' Order of Protection.

69. Plaintiffs did not respond to Defendant Ruckman because they were seeking legal counsel to initiate proceedings against the Village.

70. On July 8, 2024, Plaintiffs received letters from Defendant Ruckman stating that their positions with the Fire Department were being terminated for "Job Abandonment," even though it was Defendant Ruckman who placed them on unpaid administrative leave and had them escorted from the fire station on June 17, 2024.

71. The stated reason offered by Defendant Ruckman for Plaintiffs' termination is false and pretextual.

72. On July 16, 2024, Plaintiffs filed a second grievance ("Grievance 2") against Defendant Ruckman for terminating them while Grievance 1 was still pending.

73. On July 22, 2024, the Village Council held a meeting to consider Grievance 1 in accordance with step 3 of the grievance process.

11

74. After considering the evidence presented by Defendant Ruckman and Plaintiffs, the Village Council sustained Grievance 1 on August 4, 2024, stating:

> It is our opinion that we violated Article 32 Section A [of the CBA]. . . . [Plaintiffs] did not abandon their jobs. They were following and honoring the protection order in place by a judge for their safety. We feel sending them home on unpaid leave when they obtained a restraining order due to hostile work environment was penalizing them for the filing.

(Exhibit 3 at pdf p. 14).

75. Additionally, the Village Council stated that they "would like to see the following implemented":

> We would like the Interim Chief to put both [Plaintiff Perry] and [Plaintiff Ostroff] back on the full-time schedule on opposite shifts from [Moore] and [Givens]. With [Plaintiff Perry] being on probation during this you have texted she was fired and not coming back.
>
> We would like to see her rehired as the fourth full timer without losing time.
>
> They could not violate the terms of their restraining order. We would like both reinstated as active employees.
>
> As part of the remedy, we would like to see all four ([Moore, Givens, Plaintiff Ostroff, and Plaintiff Perry]) all put on 6 month[s'] probation. We will have a no tolerance policy for any unprofessional or improper behavior or attitude.

(*Id.*).

76. On the same day, a Village Council Member called Plaintiffs to inform them of the Village Council's decision and to offer to reinstate them with the Fire Department, which Plaintiffs verbally accepted on the phone.

77. However, approximately ten minutes after the phone call ended, the same Village Council Member called Plaintiffs to tell them that Defendant Ruckman had instructed the Interim Fire Chief not to schedule Plaintiffs for any shifts with the Fire Department.

78. Notwithstanding the decision of the Village Council, Defendant Ruckman has prevented Plaintiffs' reinstatement without explanation, and Plaintiffs have been unable to return to the Fire Department.

79. Nothing in the CBA allows a mayor or other Village official to refuse or veto the decision of the Village Council at step 3.

80. On February 11, 2025, the Village Council passed an emergency ordinance requiring Plaintiffs' reinstatement.

81. Defendant Ruckman has not complied with the February 11, 2025, Emergency Ordinance and, upon information and belief, does not intend to carry out the ordinance.

82. Defendant Ruckman's wrongful suspension and termination of Plaintiffs and her failure to abide by the terms of the Village Council's August 4, 2024, Decision have generated news coverage in local news media.

83. Defendant Ruckman's actions have also generated significant emotional and financial hardship for Plaintiffs, who have suffered lost wages and benefits, mental and emotional harm, damage to their personal and professional reputations, and other injuries.

## STATEMENT OF CLAIMS

### COUNT I
42 U.S.C. § 1983 – Retaliation in Violation of Plaintiffs' Right to Petition Pursuant to the First and Fourteenth Amendments to the United States Constitution.
(Plaintiffs v. Defendants)

84. Plaintiffs reallege and incorporate the allegations set forth in paragraphs 1 through 83.

85. Plaintiffs' right to petition the government for redress of grievances is protected by the First and Fourteenth Amendments to the United States Constitution. U.S. CONST. amend. I, amend. XIV, 1.

86. It is a violation of the First and Fourteenth Amendments for public employers to discriminate against, discipline, or discharge its employees in retaliation for engaging as private citizens in petition activity touching upon matters of public concern.

13

87. Plaintiffs' petition for an Order of Protection and their ex parte hearing before the Court of Common Pleas on June 17, 2024, touched on matters of public concern because they described gross misconduct by a public employee including, but not limited to, the destruction of Fire Department property; reckless driving when responding to emergency calls; threats against the physical safety of Fire Department employees; and aggression which made Fire Department personnel afraid to carry out their job duties in service of the community, all of which imperils the public safety of the Village community.

88. Upon learning that Plaintiffs petitioned for and received a temporary Order of Protection from the Court of Common Pleas on June 17, 2024, Defendant Ruckman engaged in actions, omissions, and decisions in retaliation for Plaintiffs' exercising their constitutional rights to petition a court of law that were designed to deny Plaintiffs' employment rights and protections granted them under law, including placing Plaintiffs on unpaid administrative leave, terminating their employment, and refusing to reinstate them in accordance with the Village Council's August 4, 2024, Decision.

89. Defendant Ruckman acted with final policymaking authority for the Village when she suspended, terminated, and refused to reinstate Plaintiffs.

90. Defendants' violation of Plaintiffs' right to petition was done in a knowing, willful, wanton, reckless, and bad faith manner, which violates clearly established constitutional provisions and rights which a reasonable person would know.

91. As a direct, foreseeable, and proximate result of Defendants' unlawful conduct, Plaintiffs have suffered and continue to suffer economic injury, harm to their reputations, humiliation, embarrassment, and other injuries and irreparable harm.

92. Defendants are also liable for Plaintiffs' reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988(b).

## COUNT II

42 U.S.C. § 1983 – Retaliation in Violation of Plaintiffs' Right to Freedom of Speech Pursuant to the First and Fourteenth Amendments to the United States Constitution.
(Plaintiffs v. Defendants)

93. Plaintiffs reallege and incorporate the allegations set forth in paragraphs 1 through 83.

94. Plaintiffs' right to freedom of speech is protected by the First and Fourteenth Amendments to the Constitution. U.S. CONST. amend. I, amend. XIV, 1.

95. It is a violation of the First and Fourteenth Amendments for public employers to discriminate against, discipline, or discharge its employees in retaliation for engaging as private citizens in speech that touches on matters of public concern.

96. Plaintiffs engaged in speech that touched on matters of public concern when they initiated a hostile work environment grievance with Fire Chief Montgomery, Defendant Ruckman, and the Village Council and when they participated in a hearing during their request for an Order of Protection.

97. Upon learning that Plaintiffs engaged in protected speech, Defendant Ruckman retaliated against Plaintiffs by placing them on unpaid administrative leave, terminating their employment with the Fire Department, and then refusing to abide by the Village Council's decision to reinstate them.

98. Defendant Ruckman acted with final policymaking authority for the Village when she suspended, terminated, and refused to reinstate Plaintiffs.

99. Defendants' violation of Plaintiffs' right to free speech was done in a knowing, willful, wanton, reckless, and bad faith manner, which violates clearly established constitutional provisions and rights which a reasonable person would know.

100. As a direct, foreseeable, and proximate result of Defendants' unlawful conduct, Plaintiffs have suffered and continue to suffer economic injury, harm to their reputations, humiliation, embarrassment, and other injuries and irreparable harm.

101. Defendants are also liable for Plaintiffs' reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988(b).

**COUNT III**
Breach of Contract
(Plaintiff Local 3714 v. Defendants)

102. Plaintiffs reallege and incorporate the allegations set forth in paragraphs 1 through 83.

103. The Village and Local 3714 entered into a collective bargaining agreement governing the terms and conditions of employment of employees employed by the Fire Department.

104. The collective bargaining agreement entered into between the Village and Local 3714 is a contract under Ohio law.

105. Plaintiffs challenged their placement on administrative leave under the terms of the collective bargaining agreement.

106. The Village Council and Local 3714 settled Plaintiffs' grievance at Step 3 of the grievance procedure set forth in the parties' collective bargaining agreement. The settlement agreement agreed to by the Village Council and Local 3714 required the return of the Plaintiffs to work.

107.   Defendants the Village and Ruckman breached the settlement agreement reached by the Village Council and Local 3714 and the collective bargaining agreement entered into between the Village and Local 3714 by refusing to return Plaintiffs to work in accordance with the terms of the settlement agreement.

108.   As a direct, foreseeable, and proximate result of the breach of Defendants' breach of contract, the Local 3714 and the Plaintiffs have been harmed.

## REQUEST FOR RELIEF

Accordingly, Plaintiffs request that this Court enter judgment on their behalf and enter an order directing the award of the following relief:

A.   Declaring that Defendants unlawfully violated Plaintiffs' rights and privileges secured by the First and Fourteenth Amendments to the United States Constitution;

B.   Enforcing the settlement agreement agreed to by the Village Council and Local 3714 to return the Plaintiffs to their positions with the Fire Department obtained under the terms of the collective bargaining agreement entered into between the Village and Local 3714;

C.   Ordering Defendants to reinstate Plaintiffs to their rightful positions within the Fire Department with the appropriate rank, job duties, seniority, compensation, benefits, and rights of employment that would have been available to Plaintiffs had they not be placed on unpaid administrative leave and terminated;

D.   Awarding Plaintiffs back pay, front pay, lost benefits, and other emoluments of employment and such other relief as is necessary to make him whole;

E.   Awarding Plaintiffs compensatory damages for pain, humiliation, and damage to their reputations;

F. Awarding Plaintiffs punitive damages to redress the knowing, willful, wanton, reckless, and bad faith nature of Defendants' violation of Plaintiffs' Constitutional rights;

G. Awarding Plaintiffs' attorneys' fees and costs;

H. Awarding Plaintiffs any other relief to which they are entitled and this Court deems necessary and proper.

**A jury trial is demanded for all claims triable by jury.**

Respectfully submitted,

/s/ Henry A. Arnett
Henry A. Arnett (0011379)
Livorno & Arnett Co., LPA
1335 Dublin Road,
Columbus, OH 43215
Phone: (614) 224-7771
Fax: (614) 224 7775
counsel@oapff.org
*Counsel for Plaintiffs*

/s/ Clark Gebhart
Clark Gebhart
(*Motion for Special Admission to Follow*)
Jamie Eisner
(*Motion for Special Admission to Follow*)
Mooney, Green, Saindon, Murphy & Welch, P.C.
1620 Eye Street NW, Suite 700
Washington, D.C. 20006
Phone: (202) 783-0010
Fax: (202) 783-6088
cgebhart@mooneygreen.com
jeisner@mooneygreen.com
*Counsel for Plaintiffs*

18