**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**WESLEY OSTROFF, *et al.*,**

**Plaintiffs,**

**v.**

**JUDY RUCKMAN, *et al.*,**

**Defendants.**

**Case Number 2:25-cv-285**
**Judge Edmund A. Sargus, Jr.**
**Magistrate Judge Kimberly A. Jolson**

**OPINION AND ORDER**

This matter is before the Court on Defendants Village of Mingo Junction and Judy Ruckman's Motion for Summary Judgment (ECF No. 36) and Plaintiffs Wesley Ostroff, Rebecca Perry, and International Association of Fire Fighters Local 3714's Motion for Summary Judgment (ECF No. 37). The Court finds that Plaintiffs fail to establish a prima facie claim of First Amendment retaliation and declines to exercise supplemental jurisdiction over the remaining state-law claim. As such, Defendants' Motion for Summary Judgment (ECF No. 36) is **GRANTED in part** and **DENIED in part** and Plaintiffs' Motion for Summary Judgment (ECF No. 37) is **DENIED**.

**BACKGROUND**

This case arises out of a workplace dispute between employees at the Mingo Junction Fire Department. (*See* ECF No. 22.) Mr. Ostroff and Ms. Perry worked as Advanced Emergency Medical Technicians ("EMTs") for the fire department and were terminated in July 2024. (*Id.* ¶¶ 8–9, 70; Ostroff Dep., ECF No. 31-1, 7:1.) Mr. Ostroff and Ms. Perry are suing the Village of Mingo Junction ("the Village") and Mayor Judy Ruckman under 42 U.S.C. § 1983 for retaliation

under the Speech and Petition Clauses of the First Amendment and the Fourteenth Amendment. (ECF No. 22, ¶¶ 84–101.)

Mr. Ostroff and Ms. Perry are members of the International Association of Fire Fighters, Local 3714 ("Local 3714"). (*Id.* ¶ 10.) Mr. Ostroff was the President of Local 3714 and Ms. Perry was the Secretary when this lawsuit was initiated. (*Id.*) Local 3714 is also suing the Village and Mayor Ruckman in this lawsuit for breach of the Collective Bargaining Agreement ("CBA") between the Village and Local 3714. (*Id.* ¶¶ 102–08.)

## I. Factual Background

Mr. Ostroff and Ms. Perry allege certain incidents of misconduct during their employment at the Mingo Junction Fire Department involving Assistant Fire Chief Nickolas Moore and Emergency Medical Services ("EMS") Lieutenant Catherine Givens. (*See generally* ECF No. 22.) For example, they state that Mr. Moore screamed and threw his phone at the windshield of the fire truck when Mr. Ostroff missed a turn while driving the truck. (Ostroff Dep., 23:16–24:5.) Another time, after Ms. Perry attempted to send Ms. Givens home for unprofessional behavior during a night shift, Plaintiffs state that Mr. Moore screamed at them while Ms. Givens threw equipment and slammed doors. (*Id.* 19:20–21:6; Perry Dep., ECF No. 32-1, 43:18–47:12.) For context, Mr. Ostroff and Ms. Perry were in a romantic relationship during the course of these events, as were Mr. Moore and Ms. Givens. (Perry Dep., 8:22–23, 43:15–20; *see also id.* Ex. I, PageID 738–39.)

Mr. Ostroff and Ms. Perry assert that they were fearful of Mr. Moore and did not feel comfortable working with him. (Ostroff Dep., 32:11–13; Perry Dep., 49:10; 54:23–55:3.) They brought their concerns to the Fire Chief, who encouraged them to speak with Mayor Ruckman. (Ostroff Dep., 31:9–14; Perry Dep., 48:21–49:3.)

On June 12, 2024, Mr. Ostroff and Ms. Perry met with Mayor Ruckman. (Ostroff Dep., 31:22–32:7; Perry Dep., 48:21–49:3.) They told her that they were fearful of Mr. Moore. (Ostroff Dep., 32:9–13; Perry Dep., 49:7–11.) Mayor Ruckman told them to talk things out with Mr. Moore and made a crude joke. (Ostroff Dep., 32:20–33:6; Perry Dep., 49:12–16.) She also said that she would contact the Fire Chief to set up a department meeting. (Ostroff Dep., 33:7–9; Perry Dep., 49:16–18.)

On June 17, Ms. Perry filed a Petition for Civil Stalking Protection Order in the Jefferson County Court of Common Pleas seeking an ex parte protective order against Mr. Moore for herself and her "significant other," Mr. Ostroff. (Perry Dep., 51:13; ECF No. 37-18.) In the space to describe two or more incidents that made Ms. Perry believe that Mr. Moore will cause her harm, Ms. Perry wrote:

> 03/28/24 – While in the truck with myself and Wesley Ostroff, Nickolas threw his phone at the windshield, subsequently cracking said windshield after becoming irrate [sic] due to Wesley missing the address of our destination, instilling fear in both of us.
>
> 06/11/24 – Came to the fire department while I was working in the middle of the night. Began yelling and threatening myself and Wesley Ostroff, inducing panic in both of us. His irrate [sic] behavior continued for approximately 1 hour.

(*Id.* PageID 1583.) On the next page, in the space to explain how Mr. Moore continues to present a danger to her and Mr. Ostroff, Ms. Perry wrote:

> Have had numerous people state that Nickolas is still making threats toward Wesley and myself. He owns a business in close proximity to our residence and place of employment. He has already proven he will show up in the middle of the night.

(*Id.* PageID 1584.)

After Ms. Perry filed the Petition, "the clerk took it upstairs to the magistrate and brought it back down signed." (Perry Dep., 56:20–21.) Nothing else was filed in addition to the Petition and Ms. Perry did not give any testimony that day. (*Id.* 55:23–25, 56:22–24.)

The signed Protective Order required Mr. Moore to not "enter or interfere with the residence, school, business, place of employment, day care centers, or child care providers of the protected persons named in this Order." (ECF No. 37-7, PageID 1492.) It also prohibited him from "initiat[ing] or hav[ing] any contact with the protected persons named in this Order or their residences, businesses, places of employment, schools, day care centers, or child care providers." (*Id.* PageID 1493.) The Protective Order was eventually dissolved on July 23 after a hearing because Ms. Perry "fail[ed] to sustain her burden of proof." (ECF No. 37-34.)

On the same day that Ms. Perry got the Protective Order, she and Mr. Ostroff had another meeting scheduled with Mayor Ruckman. (Ostroff Dep., 34:13–16.) At the meeting, Ms. Perry and Mr. Ostroff presented the Protective Order to Mayor Ruckman. (*Id.* 35:9–11.) According to both, Mayor Ruckman said she could not "take Nick's livelihood" and that Mr. Ostroff and Ms. Perry would be placed on unpaid leave until further notice. (*Id.* 35:13–15; Perry Dep., 64:21–65:16.)

The next day, Mr. Ostroff and Ms. Perry were not scheduled to work. (Ostroff Dep., 37:2–5; Perry Dep., 67:20–68:2.) The day after that, June 19, Mayor Ruckman sent a text message to Ms. Perry that said: "I wanted to reach out and ask if you want to come back to work as long as it wasn't working with the Assistant Fire Chief. Would you be comfortable?" (ECF No. 37-20, PageID 1594.) She sent a similar text message to Mr. Ostroff. (ECF No. 37-21, PageID 1598.) Mr. Ostroff and Ms. Perry responded that they would be willing to return to work if they could get in writing that they would not be scheduled to work at the same time as Mr. Moore and Ms. Givens, and that Mr. Moore and Ms. Givens would not answer "all calls"[1] while

[1] Although the parties do not explain the meaning of "all call," the Court understands it to refer to a situation where off-duty employees are called to assist in an emergency. (*See* Perry Dep., 103:13–16.)

Mr. Ostroff and Ms. Perry were on shift and vice versa. (ECF No. 37-20, PageID 1594–95; ECF No. 37-21, PageID 1598–99.) Mayor Ruckman replied that she was advised not to put anything in writing. (ECF No. 37-20, PageID 1595; ECF No. 37-21, PageID 1600.) Mr. Ostroff and Ms. Perry did not return to work. (Ostroff Dep., 17:1–6; Perry Dep., 69:3–5.)

On June 24, Mr. Ostroff and Ms. Perry filed grievances for being placed on unpaid leave. (ECF Nos. 37-5, 37-6.) Two days later, Mr. Ostroff, Ms. Perry, Mayor Ruckman, a union representative, and the Village Administrator met to discuss the grievances. (Ostroff Dep., 39:10–15; Perry Dep., 71:18–23; Ruckman Dep., ECF No. 29-1, 82:7–9.) They discussed Mr. Ostroff and Ms. Perry returning to work but did not reach a resolution. (Ostroff Dep., 39:17–23; Ruckman Dep., 82:10–84:3, 86:20–23.)

On July 2, Mayor Ruckman sent text messages to Mr. Ostroff and Ms. Perry asking, "Are you coming back to work?" (ECF No. 37-20, PageID 1595; ECF No. 37-21, PageID 1600.) On July 3, Mayor Ruckman sent each a text message stating:

> I spoke to our attorney. The Hostile work environment can be handled if you are on different shifts and have no interaction with Nick. As far as all calls mutual aide The Village has a responsibility to protect the public. Having two members as the reason they can't respond is not feasible. Will you be returning to work?

(ECF No. 37-20, PageID 1597; ECF No. 37-21, PageID 1601.) Mr. Ostroff and Ms. Perry did not respond. (*See* ECF Nos. 37-20, 37-21.)

Five days later, on July 8, Mayor Ruckman terminated Mr. Ostroff and Ms. Perry for job abandonment/voluntary discharge under the Employee Handbook and the fire department's Standard Operating Policy after being absent for five days without notice or leave. (ECF Nos. 37-22, 37-23; *see also* ECF No. 30-1, PageID 354; ECF No. 37-3, PageID 1417.) Mr. Ostroff and Ms. Perry subsequently filed grievances for being terminated. (ECF No. 30-1, PageID 505–10, 513–18.)

In late July, the Village Council had a meeting on Mr. Ostroff's and Ms. Perry's grievances related to them being put on leave, as part of the grievance process. (Ostroff Dep., 47:11–25; Perry Dep., 96:3–8, 97:20–98:2.) After a vote, the Council found that Mr. Ostroff and Ms. Perry were retaliated against for getting an order of protection against Mr. Moore. (ECF No. 37-25, PageID 1607.) It decided that Mr. Ostroff and Ms. Perry could work on opposite shifts of Mr. Moore and Ms. Givens, that whoever was on shift during an "all call" would respond to it and the other two would not, and that all four would be placed on a six-month probation. (*Id.* PageID 1606.) After the Council's decision, Mayor Ruckman informed the Council that Mr. Ostroff and Mr. Perry had been terminated and would not be returning. (Ruckman Dep., 97:4–7.)

Subsequently, the Council voted to reinstate Mr. Ostroff and Ms. Perry and passed an ordinance directing the same. (ECF Nos. 37-31, 37-33.) Mayor Ruckman refused to reinstate Mr. Ostroff and Ms. Perry, maintaining that they were terminated for just cause under the CBA (five days of no call no shows) and that she offered them resolutions to their grievances but they did not respond. (ECF Nos. 37-30; 37-35; *see also* Ruckman Dep., 119:13–18.) She also maintains that Ms. Perry was an at-will employee who could be terminated for no reason. (ECF No. 37-35.)

Mr. Ostroff, Ms. Perry, and Local 3714 filed the instant lawsuit. (ECF No. 22.) After conducting discovery, both sides moved for summary judgment. (ECF Nos. 36, 37.) Each filed responses in opposition (ECF Nos. 40, 41), and replies in support (ECF Nos. 42, 43).

## LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant has the burden of showing that the nonmoving party lacks evidence to support an essential element of its claim. *Berryman v. SuperValu Holdings, Inc.*, 669 F.3d 714, 716–17

(6th Cir. 2012); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (quoting Fed. R. Civ. P. 56) (internal quotations omitted).

A genuine issue of material fact exists if the nonmoving party can present "significant probative evidence" to show that there is more than "some metaphysical doubt as to the material facts." *Anwar v. Dow Chem. Co.*, 876 F.3d 841, 851 (6th Cir. 2017) (quoting *Moore v. Philip Morris Cos. Inc.*, 8 F.3d 335, 340 (6th Cir. 1993)). "The key issue is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Rocheleau v. Elder Living Constr., LLC*, 814 F.3d 398, 400 (6th Cir. 2016) (quoting *Liberty Lobby*, 477 U.S. at 251–52). In making that determination, the court does not weigh the evidence or determine the truth of the matter, but it decides whether a genuine issue exists for trial. *Liberty Lobby*, 477 U.S. at 249.

The standard of review does not change when the parties file cross-motions for summary judgment. *Craig v. Bridges Bros. Trucking LLC*, 823 F.3d 382, 387 (6th Cir. 2016). "The court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *Id.* at 391 (quoting *Taft Broad. Co. v. United States*, 929 F.2d 240, 248 (6th Cir. 1991)).

## ANALYSIS

Plaintiffs move for summary judgment on their claims that Defendants retaliated against Mr. Ostroff and Ms. Perry for exercising their First Amendment rights and breached the CBA by not following grievance procedure. (ECF No. 37, PageID 1192.) Defendants move for summary judgment on the constitutional and breach-of-contract claims, as well. (ECF No. 36, PageID

1163.) They also contend that Mayor Ruckman is entitled to qualified immunity and that Plaintiffs fail to allege a *Monell* claim against the Village. (*Id.*) The Court begins with the constitutional claims.

**I. First Amendment Retaliation**

Plaintiffs state in their Motion for Summary Judgment that the basis of Mr. Ostroff and Ms. Perry's retaliation claims is Ms. Perry's Petition[2] for Civil Stalking Protection Order submitted in the Jefferson County Court of Common Pleas. (ECF No. 37, PageID 1230; *see* ECF No. 37-18.) Plaintiffs explain that their retaliation claims are brought under the Speech and Petition clauses of the First Amendment.[3] (*Id.*; *see* ECF No. 22, ¶¶ 85, 94.)

The Court first addresses a preliminary matter. Plaintiffs' Complaint brings two retaliation claims, each under the First and Fourteenth Amendments. (ECF No. 22.) The basis of the first claim is Ms. Perry's Petition. (*Id.* ¶ 87.) The basis of the second claim is a "hostile work environment" complaint submitted by Mr. Ostroff to the Fire Chief, the Village Council, and Mayor Ruckman and Mr. Ostroff's and Ms. Perry's participation in the grievance hearing. (*Id.* ¶ 96; *see* ECF No. 37-10.) Plaintiffs' Motion for Summary Judgement states that now the basis of both claims is Ms. Perry's Petition and makes no mention of the hostile work environment complaint and participation in the grievance hearing. (ECF No. 37, PageID 1230.) And in their opposition to Defendants' Motion, Plaintiffs state: "To be clear, the speech grounding Plaintiffs'

---

[2] It is not clear that Mr. Ostroff has standing to assert claims based on a Petition filed by Ms. Perry. *See Crawford v. Columbus State Cmty. Coll.*, 196 F. Supp. 3d 766, 774 (S.D. Ohio 2016) (Marbley, J.). The Court need not engage in this analysis, though, because the claims fail on other grounds.

[3] Even though the Complaint alleged First and Fourteenth Amendment violations (ECF No. 22), the parties do not raise any Fourteenth Amendment issues in their Motions for Summary Judgment. (*See* ECF Nos. 36, 37.) As such, the Court does not consider any Fourteenth Amendment issues in this Opinion and Order.

speech claim, Count II, is the speech contained in the petition for a protection order—not Plaintiff Ostroff's hostile work environment complaint." (ECF No. 40, PageID 1752 n.5.) The Court thus construes these statements to mean that Plaintiffs abandon the complaint as the basis of any First Amendment claim and does not consider it when evaluating the retaliation claims. *Cf. Brown v. VHS of Mich., Inc.*, 545 F. App'x 368, 372 (6th Cir. 2013) (explaining that a plaintiff abandons a claim by failing to address it in response to a motion for summary judgment).

To prevail on a First Amendment retaliation claim, a plaintiff must establish a prima facie claim by showing that: (1) she engaged in constitutionally protected speech or conduct; (2) she was subjected to an adverse employment action that would deter a person of ordinary firmness from continuing to engage in that speech or conduct; and (3) there is a causal connection between the speech or conduct and the adverse action. *Benison v. Ross*, 765 F.3d 649, 658 (6th Cir. 2014); *see also Buddenberg v. Weisdack*, 939 F.3d 732, 739 (6th Cir. 2019).

To satisfy the first prong, a public employee must establish that she spoke as a "citizen on a matter of public concern." *Stinebaugh v. City of Wapakoneta*, 630 F. App'x 522, 525 (6th Cir. 2015) (quoting *Garcetti v. Ceballos*, 547 U.S. 410, 481 (2006)); *see also Borough of Duryea v. Guarnieri*, 564 U.S. 379, 394 (2011) (holding that the "public concern test" applies in a right-to-petition context). If the speech touches on matters of public concern, the Court must apply the *Pickering* balancing test by balancing the employee's interest in addressing the matter of public concern with the employer's interest "in promoting the efficiency of the public services it performs through its employees." *Mosholder v. Barnhardt*, 679 F.3d 443, 451 (6th Cir. 2012) (quoting *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968)).

The parties do not dispute that Ms. Perry spoke as a private citizen in filing the Petition. (ECF No. 37, PageID 1231; *see* ECF No. 36, PageID 1177–78.) They do dispute, however, whether the Petition touched on matters of public concern. (ECF No. 36, PageID 1177–78; ECF No. 37, PageID 1231–36.)

Whether speech involves a matter of public concern is a question of law. *Bagi v. City of Parma*, 714 F. App'x 480, 485 (6th Cir. 2017). When considering whether speech touches on a matter of public concern, courts consider the "content, form, and context of a given statement, as revealed by the whole record." *Connick v. Myers*, 461 U.S. 138, 148–49 (1983); *see also Duryea*, 564 U.S. at 398 (stating the same framework applies in a right-to-petition context). Speech involves matters of public concern when it can be fairly considered to involve a "matter of political, social, or other concern to the community." *Dye v. Off. of the Racing Comm'n*, 702 F.3d 286, 295 (6th Cir. 2012) (quoting *Connick*, 461 U.S. at 146); *Rorrer v. City of Stow*, 743 F.3d 1025, 1047 (6th Cir. 2014). Motive "is a relevant, but not dispositive, factor when considering whether an employee's expression is of public concern." *Farhat v. Jopke*, 370 F.3d 580, 590–91 (6th Cir. 2004); *see also Naghtin v. Montague Fire Dist. Bd.*, 674 F. App'x 475, 481 (6th Cir. 2016). More importantly, courts consider *what* the employee said, rather than why she said it. *Farhat*, 370 F.3d at 591. "The mere fact that a government employee's speech *may* touch on areas of general public interest, . . . does not necessarily mean that the speech involves a matter of public concern." *Stanalajczo v. Perry*, 174 F.4th 968, 974 (6th Cir. 2026) (emphasis added).

The Petition is a form that Ms. Perry filled out. (ECF No. 37-18.) In it she identified herself as the petitioner, Mr. Ostroff as her significant other, and Mr. Moore as the respondent

and answered various questions regarding her request for a protective order. (*Id.*) As noted, Ms. Perry's responses stated:

> 03/28/24 – While in the truck with myself and Wesley Ostroff, Nickolas threw his phone at the windshield, subsequently cracking said windshield after becoming irrate [sic] due to Wesley missing the address of our destination, instilling fear in both of us.
>
> 06/11/24 – Came to the fire department while I was working in the middle of the night. Began yelling and threatening myself and Wesley Ostroff, inducing panic in both of us. His irrate [sic] behavior continued for approximately 1 hour.
>
> . . .
>
> Have had numerous people state that Nickolas is still making threats toward Wesley and myself. He owns a business in close proximity to our residence and place of employment. He has already proven he will show up in the middle of the night.

(*Id.* PageID 1583–84.)

Ms. Perry completed the form for the purpose of seeking a protective order against Mr. Moore for herself and her significant other, Mr. Ostroff. The Petition thus focuses on a matter of personal interest rather than public concern. *See Baird v. Hamilton Cnty. Dep't of Job & Fam. Servs.*, 809 F. App'x 308, 311 (6th Cir. 2020). Specifically, it expounds on issues of her safety and that of Mr. Ostroff, rather than matters of public significance such as "[e]xposing governmental inefficiency, mismanagement, or misappropriation of public money." *Stinebaugh*, 630 F. App'x at 527; *see also Connick*, 461 U.S. at 148 (1983) (indicating that statements exposing a breach of public trust or a failure to perform governmental obligations would be matters of public concern). Of course, courts take assertions of threats to safety seriously, but that does not mean they are matters of public concern.

Although the Petition mentions that Ms. Perry worked at the fire department, it does not identify Mr. Moore as an employee of the Mingo Junction Fire Department, much less as the Assistant Fire Chief. To the contrary, the Petition describes Mr. Moore only as someone who

"owns a business in close proximity to our residence and place of employment." (ECF No. 37-18, PageID 1584.) Plaintiffs' argument that the Petition addressed matters of "official misconduct" (ECF No. 37, PageID 1231) is unavailing because it never identifies Mr. Moore as a public employee or an official in any capacity. Nor does the Petition support Plaintiffs' assertion that it concerned "public safety" or "the efficient operations of the fire department." (*Id.*) It makes no mention of the Mingo Junction Fire Department or the provision of emergency services, much less any inability to effectively provide emergency services to the community.

Overall, the Petition constitutes part of an ongoing workplace dispute between employees that does not amount to a matter of public concern. "[T]he First Amendment does not require a public office to be run as a roundtable for employee complaints over internal office affairs." *Connick*, 461 U.S. 138; *see also Duryea*, 564 U.S. at 399 (explaining that the Petition Clause of the First Amendment does not give public employees "a right to transform everyday employment disputes into matters for constitutional litigation in the federal courts."). Accordingly, the Sixth Circuit generally distinguishes matters of public concern from "internal personnel disputes" and "employee beef." *Brandenburg v. Hous. Auth. of Irvine*, 253 F.3d 891, 898 (6th Cir. 2001); *Myers v. City of Centerville*, 41 F.4th 746, 761 (6th Cir. 2022); *Patterson v. Kent State Univ.*, 155 F.4th 635, 649 (6th Cir. 2025). Here, Mr. Ostroff and Ms. Perry stated that they were fearful of Mr. Moore and did not feel comfortable working with him, and then they filed the Petition seeking a protective order against him. The Petition thus arose from their personal concerns about working with Mr. Moore, not from an effort to raise a matter of public concern.

Much of Plaintiffs' public-concern argument focuses on a "Hostile Work Environment Complaint" submitted by Mr. Ostroff to the Fire Chief, the Village Council, and Mayor Ruckman to show the context surrounding the Petition. (ECF No. 37, PageID 1234–35; *see* ECF

No. 37-10.) Although one of Plaintiffs' retaliation claims was originally based on that complaint (ECF No. 22, ¶ 96), Plaintiffs have abandoned the complaint as a basis for their retaliation claim by only focusing on the Petition in their Motion for Summary Judgment. (ECF No. 37, PageID 1230.) It is notable that Plaintiffs abandon the complaint as the basis for a First Amendment claim but simultaneously rely on it to establish that the Petition touched on a matter of public concern.

Nevertheless, Mr. Ostroff's complaint cannot supplement or add to the speech in the Petition. Although courts consider context when conducting a public-concern analysis, the focus remains on the speech itself. *Farhat*, 370 F.3d at 591 ("[T]he pertinent question is not *why* the employee spoke, but *what* he said."); *Farhat*, 370 F.3d at 592–93 (considering context to ascertain the focus of the alleged protected speech); *Stanalajczo*, 174 F.4th at 975 (same); *cf. Russell v. City of Detroit*, No. 16-cv-11857, 2018 WL 2045957, at *7 (E.D. Mich. May 2, 2018) (considering a letter in its entirety to determine that it touched on racial discrimination, which is a matter of public concern). Context may inform the Court's understanding of the speech, but it cannot supply statements that are absent from the speech itself. *See Naghtin*, 674 F. App'x at 481 (declining to construe a petition as addressing a matter not mentioned in the petition and cautioning against "post-hoc rationalizations that were not apparently relevant in the disputed speech at issue when first made"). The inquiry therefore centers on the speech in the Petition and whether it touches on matters of public concern. And as explained above, the Court finds that it does not.

Further, Plaintiffs argue that the Petition does not have to "spell out the consequences of Mr. Moore's" conduct for it to implicate matters of public concern. (ECF No. 37, PageID 1234–35 & n.28.) But as stated above, the proper inquiry in a public-concern analysis is the focus or

purpose of the speech and "not what might be incidentally conveyed by the speech." *Farhat*, 370 F.3d at 593 (internal quotations omitted). And any "passing or fleeting references to an arguably public matter do not elevate the speech to a matter of public concern where the focus or point of the speech advances only a private interest." *Id.* at 592–93 (internal quotation marks omitted). Here, the focus of the Petition was to seek a protective order against Mr. Moore to address concerns for Ms. Perry's and Mr. Ostroff's personal safety, rather than matters of public concern.

"If the employee's speech does not address a matter of public concern, there is no need to balance his interest in speech with the employer's interest in efficiency, and the employee's claim must fail." *Van Compernolle v. City of Zeeland*, 241 F. App'x 244, 249 (6th Cir. 2007). The Petition did not touch on matters of public concern, and so the Court does not get to the *Pickering* balancing test. Nor does the Court need to address the remaining prongs of the prima facie retaliation claim because with no constitutionally protected speech, Plaintiffs' claims fail. Accordingly, Defendants are entitled to summary judgment on Plaintiffs' First Amendment retaliation claims.

Additionally, on the constitutional claims, Defendants argue that Mayor Ruckman is entitled to qualified immunity and that Plaintiffs fail to allege a *Monell* claim against the Village. (ECF No. 36, PageID 1183–88.) Because the Court finds that Defendants are entitled to summary judgment on the constitutional claims on other grounds, it does not reach Defendants' qualified-immunity and *Monell* arguments.

Defendants' Motion for Summary Judgment on the retaliation claims is **GRANTED** and Plaintiffs' Motion for Summary Judgment on the retaliation claims is **DENIED**.

## II. Breach of Contract

Each side moves for summary judgment on Local 3714's breach-of-contract claim. (ECF No. 36, PageID 1189–90; ECF No. 37, PageID 1226–1229.) Additionally, Defendants argue that the Court should decline to exercise supplemental jurisdiction over the claim. (ECF No. 36, PageID 1188–89.)

Local 3714's breach-of-contract claim is based on state law. (*See* ECF No. 22, ¶ 104.) A district court may decline to exercise supplemental jurisdiction when it has dismissed all claims over which it had original federal jurisdiction. 28 U.S.C. § 1367(c)(3); *see also Williams v. Addison Cmty. Schs.*, 168 F.4th 791, 794 (6th Cir. 2026).

"In determining whether to retain jurisdiction over state-law claims, a district court should consider and weigh several factors, including the 'values of judicial economy, convenience, fairness, and comity.'" *Gamel v. City of Cincinnati*, 625 F.3d 949, 951 (6th Cir. 2010) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)). But "[i]f the federal claims are dismissed before trial, the state claims generally should be dismissed as well." *Brooks v. Rothe*, 577 F.3d 701, 709 (6th Cir. 2009) ) (quoting *Wojnicz v. Davis*, 80 F. App'x 382, 384–85 (6th Cir. 2003); *see also Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006) ("[A] federal court that has dismissed a plaintiff's federal-law claims should not ordinarily reach the plaintiff's state-law claims.").

The Court grants summary judgment to Defendants on Mr. Ostroff and Ms. Perry's federal claims, and Local 3714's remaining state-law claim does not implicate significant federal interests to warrant the exercise of federal jurisdiction. The Court therefore declines to "needlessly decid[e] state law issues." *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993); *see also United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) ("Needless decisions of state law should be avoided both as a matter of comity and to

promote justice between the parties, by procuring for them a surer-footed reading of applicable law.”). Accordingly, Local 3714’s breach-of-contract claim is **DISMISSED without prejudice** under 28 U.S.C. § 1367(c)(3). Thus, both sides’ motions for summary judgment on the breach-of-contract claim are **DENIED**.

**CONCLUSION**

For the reasons stated in this Opinion and Order, the Court **GRANTS in part** and **DENIES in part** (ECF No. 36) Defendants Village of Mingo Junction and Judy Ruckman’s Motion for Summary Judgment and **DENIES** (ECF No. 37) Plaintiffs Wesley Ostroff, Rebecca Perry, and International Association of Fire Fighters Local 3714’s Motion for Summary Judgment. The Court declines to exercise supplemental jurisdiction over Plaintiffs’ breach-of-contract claim and **DISMISSES without prejudice** that claim.

The Clerk is directed to enter judgment and terminate this case on the docket.

**IT IS SO ORDERED.**

**9/29/2026**
**DATE**

**s/Edmund A. Sargus, Jr.**
**EDMUND A. SARGUS, JR.**
**UNITED STATES DISTRICT JUDGE**